IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
AT SAINT LOUIS

| | |
|---|---|
| THE ART MUSEUM SUBDISTRICT<br>OF THE METROPOLITAN ZOOLOGICAL<br>PARK AND MUSEUM DISTRICT OF<br>THE CITY OF SAINT LOUIS AND THE<br>COUNTY OF SAINT LOUIS,<br><br>                Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br>JANET NAPOLITANO, and<br>ERIC H. HOLDER,<br><br>                Defendants. | Case No.: 4:11-cv-00291-HEA |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW The Art Museum Subdistrict of the Metropolitan Zoological Park and Museum District of the City of St. Louis and the County of St. Louis, operating as the Saint Louis Art Museum ("Museum"), and for its response to the United States of America's, Jane Napolitano's, and Eric H. Holder's ("Defendants" or "the Government") motion to dismiss the Museum's declaratory judgment complaint, respectfully states as follows:

**BACKGROUND**

The Government's motion to dismiss this action and its concomitant institution of civil forfeiture proceedings against the mask of Ka Nefer Nefer ("the Mask") is a tactic to allow persons or entities who are otherwise barred from claiming an interest in the Mask to make otherwise illegitimate claims against the Mask in the context of a forfeiture proceeding, all at the

1

expense of the Museum. This scheme effectively forces the Museum to continue to pay for an item it purchased nearly 13 years ago, regardless of whether the Government is ultimately successful. The court should swiftly see this for what it is: the Government's motion to dismiss this declaratory judgment action is its attempt to open the door to claimants who, in any other context, would be barred by the statute of limitations but who, in the context of a civil forfeiture action under the Tariff Act of 1930, can resurrect a claim as old as the Mask itself. Indeed, as the Government is barred by the statute of limitations from pursuing this action, so must any claimants be barred from using this action to allege an interest in the Mask. *See*, Complaint at ¶ 19 - 23.

Further, as the Government is, in this action, acting on behalf of the Supreme Council of Antiquities of the Ministry of Culture of the Arab Republic of Egypt ("SCA"), this action provides the most efficient and effective way to finally resolve the rights of the only two true parties in interest, the Museum and the Republic of Egypt.

## I. This Declaratory Judgment Action is the Appropriate Vehicle by Which to Determine the Interests of the Only Parties to the Dispute

The granting of a declaratory judgment rests soundly in the discretion of the district court. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). However, "[t]he mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391 (5th Cir. 2003). The Eighth Circuit has clearly articulated the considerations district courts must make in exercising this discretion, and has adopted Professor Borchard's widely quoted[1] standard:

---

[1] E. Borchard, Declaratory Judgments 299 (2d ed. 1941).

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Alsager v. Dist. Court of Polk Co., Iowa (Juvenile Division),* 518 F.2d 1160, 1163-64 (8th Cir. 1975).

Indeed, a declaratory judgment need not be a perfect action, nor need it be "dismissed because it cannot settle all possible differences between the parties;" it need only effectively settle the dispute between the parties and "provide relief from uncertainty, insecurity and the controversy giving rise to the proceeding." *Konop for Konop v. Northwestern Sch. Dist.,* 26 F.Supp.2d 1189, 1193 (D.C. S.D. 1998). This declaratory action clearly fits that precept well: it will settle the dispute between the parties over title to the Mask, and in ultimately ending the controversy, will provide certainty and security.

The Government claims declaratory relief such as that sought by the Complaint in this case is not available as a vehicle primarily for raising affirmative defenses. In support, the Government cite *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995). However, in BASF, the court specifically called "off the mark" the suggestion of a blanket prohibition on affirmative defenses raised by declaratory judgment actions. *Id.*. The court went on to note that courts "regularly consider the merits of affirmative defenses raised by plaintiffs" and, in cataloging such defenses, specifically listed statute of limitations. *Id*. In fact, the Eighth Circuit rejected BASF's claim for declaratory relief because, in filing the suit, BASF sought to take advantage of a favorable <u>state</u> law statute of limitations. *Id*. Here, there is no such "misuse of the declaratory judgment act" because this action will not "deny an allegedly injured party its

3

otherwise legitimate choice of the forum and time for suit." *Id*. The only statute of limitations at issue is that imposed by 19 U.S.C. § 1621, the provision cited by Plaintiffs. And, as the Government's motion does not raise the issue of jurisdiction or venue (in fact, the Government concedes to both in its verified forfeiture complaint), the Government negates its own argument that the Museum filed its complaint in attempted "forum shopping."[2]

The Government also suggests that declaratory relief should be denied in this matter because the Museum had notice of a planned suit by the Government, and that the Government "delayed in bringing its civil forfeiture action in the hopes of reaching an amicable resolution." In support, the Government relies on case law that is distinguishable from this case and on a characterization of the facts that is, very charitably, inaccurate.

Since this dispute began in 2005, there has been only one meeting between the parties. *See* Affidavit of David Linenbroker, Attachment A to Plaintiff's Complaint for Declaratory Judgment) and no conversation whatsoever about an "amicable resolution." The Government began this meeting by rendering the Museum hopeless that anything akin to "amicable resolution" was an option for the Museum. Specifically, the Assistant United States Attorney's opening remarks consisted of a declaration that the Government could and would "take the Mask" and the Government's assessment that the only question left to resolve was "how you [the Museum] want the headline to read." Just as this is far from an attempt at an "amicable resolution," likewise it can hardly be equated with the letter notice in *Fed. Ins. Co. v. May Dep't Stores Co*., 808 F.Supp. 347, 347-51 (S.D. N.Y. 1992), on which the Government relies. In that case, not only was there actually a letter notice stating the intent to sue, the issue at hand related to two competing federal districts, not two competing lawsuits about the same issue in the same federal district. *See Fed. Ins. Co*., 808 F.Supp. at 349-50.

---

[2] *See*, Defendants' Memorandum in Support of its Motion to Dismiss or Stay Proceedings (Doc. 9), p. 3.

4

## II. The Defendants' motion and concomitant forfeiture complaint are an attempt to avoid applicable statutes of limitation, including 19 U.S.C. §1621, which bars the government from recovering

The Government also suggests that its civil forfeiture action - filed at the same time as the Government's motion to dismiss - is the preferable action because it will "quiet title" to the Mask, will "dispose of all the issues" regarding the Mask, is a "superior vehicle for adjudicating the rights at issue because it is capable of resolving the entire controversy between the parties," and that this action is brought "merely in anticipation of a coercive suit" and thus would be "needlessly duplicative" of the Government's civil forfeiture suit. *See* Defendants' Motion to Dismiss or Stay Proceedings, (Doc. 8), p. 3. The Government's arguments might be persuasive in another case where, perhaps, there were untold or unknown numbers and kinds of potential claims to the property at issue.

In this instance, however, there is but one potential claimant, the Supreme Council of Antiquities of the Ministry of Culture of the Arab Republic of Egypt ("SCA").[3] The SCA has known of the Plaintiff's possession of the Mask since well before this dispute began. In fact, in the nearly thirteen years since the Museum purchased the Mask, the SCA, through its Secretary General, Dr. Zahi Hawass, is the one and only entity that has claimed any interest whatsoever in the Mask. No other person or entity has contacted the Museum, reported to the Art Loss Register (or any authority whatsoever) that the Mask is stolen or wrongfully possessed, or sought

---

[3] The Supreme Council of Antiquities is an arm of the Ministry of Culture, one of 26 cabinet-level ministries sworn in by current Prime Minister Essam Sharaf. The former Secretary General of the SCA, Dr. Zawi Hawass, was Vice Minister of Culture from 2009 until early 2011, when he was appointed Minister of State for Antiquities Affairs by former president Hosni Mubarak. Hawass resigned that post on March 3, 2011in the wake of widespread looting of antiquities across Egypt in connection with the Egyptian revolution. According to the official MENA news agency, Hawass was named Minister of Antiquities on March 30, 2011. *See*, Jerusalem Post, March 30, 2011, available at http://www.jpost.com/Headlines/Article.aspx?id=214426 (last visited March 30, 2011).

5

the return of the Mask by legal action or otherwise. On information and belief, the Government intends, if successful, to turn possession of the Mask over to the government of Egypt.

Any and all entities or persons who may possibly claim an interest in the Mask are barred by applicable statutes of limitations from pursuing such claims. Parties claiming against the Mask could do so by bringing actions such as for replevin (*Hoelzer v. City of Stamford, Conn.*, 933 F.2d 1131, 1131-39 (2d Cir. 1991)), conversion (*U.S. v. Portrait of Wally, A Painting By Egon Schiele*, 2002 WL 553532 * 13 (S.D. N.Y. 2002)), negligence (*Leonardo Da Vinci's Horse, Inc. v. O'Brien*, 761 F.Supp. 1222, 1228-30 (E.D. Pa. 1991)), and breach of implied warranty of good sale (*Jeanneret v. Vichey*, 693 F.2d 259, 259-69 (2d Cir. 1982)). At most, parties claiming the Mask were subject to a five-year statute of limitations, and are, therefore, time-barred from asserting such claims. Mo. Rev. Stat. § 516.120. Further, the identity of potential claimants is no mystery - indeed, legitimate claims can only potentially be brought by the government of the Republic Egypt and the persons or entities that possessed the Mask following its excavation until the time of its purchase by the Museum.

However, in the civil forfeiture action brought by the Government, there is no such bar. Potential claimants are at the mercy of the Government and may claim an interest in property sought to be forfeited only after the Government files a verified forfeiture complaint. Rule G(5)(a), Supplemental Rules of Civil Procedure. But once the Government commences a forfeiture action, the gates are opened for other potential claimants who otherwise would have no other recourse for claiming the Mask as their own.

The court should also consider the impact on the Museum if the Governments' suit is allowed to proceed. By inviting claimants to stake an interest in the Mask (as it is required to do pursuant to Rule G(4)(b) of the Supplemental Rules of Civil Procedure), the Government extends

6

an invitation to claimants to challenge the lawful possession of the Mask by the Museum in the context of a lawsuit that heaps cost on the Museum to litigate and rebut claims that could never have been brought otherwise.  The settling effect of the statute of limitations is thwarted and parties who would otherwise never have legitimate claims are allowed to skirt the principal that a claim not acted upon is a claim forfeited.

## CONCLUSION

The Museum's declaratory judgment complaint in this case is a wholly sufficient means by which to determine the lawful ownership of the Mask as between the only two parties in interest in this matter - one directly, the other by proxy.  The Government's attempt to end this suit and begin another is an intolerable attempt to skirt the statute of limitations that bars the government, and therefore any other entities, from making a claim against the Mask.  For the reasons set out above, the Museum respectfully prays this court for its order denying the Government's motion and directing that an Answer to the allegations in the Museum's Complaint be filed.

Respectfully Submitted,

/s/ Patrick A. McInerney
Patrick A. McInerney             MO# 37638
McClain E. Bryant                MO# 60127
**HUSCH BLACKWELL LLP**
4801 Main St, Suite 1000
Kansas City, MO 64112
pat.mcinerney@huschblackwell.com
mcclain.bryant@huschblackwell.com
816.983.8000 (phone)
816.983.8080 (fax)

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 30, 2011, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Patrick A. McInerney
Patrick A. McInerney, MO #37638
Attorney for Plaintiff Saint Louis Art Museum